Martin Schenck, J.
This is a petition for a writ of error coram nobis. The defendant was convicted of the crime of murder in the second degree following trial by jury in this court in 1951. He had been indicted for murder in the first degree. He was sentenced to a term of from 35 years to life in Clinton Prison. Subsequently, defendant brought several proceedings in the nature of coram nobis writs all of which proved unavailing to him. He now brings this petition upon the authority of the recent decision of the Supreme Court of the United States in Jackson v. Denno (378 U. S. 368, decided June 22, 1964).
Petitioner contends that his conviction was improper because a written statement and several oral statements which amounted, in effect, to confessions were admitted in evidence without the question of their voluntariness having been passed upon by the court. There is no question but that oral testimony was received which quoted the defendant as having stated he had killed a woman. There was also received in evidence a stenographic report of a series of questions and answers put to the defendant which on its face constituted a confession. The question of the voluntariness of these confessions was never raised at the trial. The issue was not submitted to the trial jury in accordance with the practice in New York courts for many years prior to the Jackson v. Denno (supra) decision. The only objections were on the grounds of incompetency, immateriality, irrelevancy and failure to lay proper foundation for the questions propounded to the defendant. The question now presented is whether the facts here fall within the procedural requirements relative to confessions as set forth by the Supreme Court in Jackson v. Denno.
It would appear from the Supreme Court’s opinion that if, in fact, there was an issue of whether or not a confession was voluntary, it would make no difference that the defense counsel did not raise that issue in so many words. If there was a question of voluntariness, the Supreme Court held, that question must be resolved by the trial court in the absence of the jury. It was held that the old New York law, which permitted determination of the issue of voluntariness by the jury, amounted to a deprivation of the rights of the accused and submission of such issue to the jury would require a reversal of conviction. It is, therefore, necessary to analyze the record of the trial, and to see if actually there was such an issue involved. If there was no such issue there would have been no basis for the court’s passing upon the point in the absence of the jury and there *926 would, therefore, be no ground for reversal of the conviction under the reasoning of the Supreme Court.
The facts surrounding the case as pertinent to the present proceedings are briefly as follows: the defendant came to Albany Police Detective Headquarters at about 5:30 a.m. on the morning of February 16, 1950. He was accompanied by his brother. At that time the police were not investigating the crime charged in the indictment because the matter had not come to their attention or, indeed, to the attention of anyone else except those to whom the defendant himself disclosed it. The defendant stated to the police that he had just killed a girl. The detective in charge inquired 1 £ who ? ’ ’. The defendant answered £ £ Terry Perski ’ ’. The defendant thereupon led several policemen to a rooming house where he showed them the body of the deceased identified as one Terry Perski. Then in response to questions as to how her death had occurred he related the story, according to the police testimony, that he had stabbed the woman with a knife. The weapon was in the room at the .time the police arrived with the defendant and was identified by him. Thereafter, the defendant returned to police headquarters where he was further questioned. Subsequently, the District Attorney appeared and a stenographic statement was taken down in question and answer form. At the trial the defense raised was that Miss Perski’s death was the result of an “accident”. Defendant testified being present and holding the knife which he said “ slipped ” from his hand into her body.
It appears clear from the foregoing that the defendant was not questioned by the police in the course of their investigation of a crime until he, of his own accord, and in the company of his brother, presented himself in detective headquarters and made voluntary statements. It is impossible to find from these facts any issue as to the voluntariness of the defendant’s statements that should have been passed upon by the court out of the presence of the jury under the requirements of the Jackson v. Denno decision. It is true that after the first statements by the defendant the police and the District Attorney took the initiative in questioning the defendant, but he has never contended that his answers to these questions were anything but voluntary. As a matter of fact, his initial statements to the police must necessarily have been voluntary because they were initiated by the defendant himself. The subsequent statements were, in effect, merely surplusage. There was, therefore, no issue such as confronted the court in the Jackson v. Denno case (supra) and there is no basis for granting the relief sought herein because of a record which includes the statements which for all practical purposes must be deemed voluntary confessions.
*927 The defendant has not raised the point, but in view of the fact that he has petitioned on his own papers without the aid of an attorney, I think it incumbent upon me to investigate the proposition of whether :the defendant has been denied constitutional rights under the opinion of the Supreme Court handed down the same day as Jackson v. Denno (supra). I refer to Escobedo v. State of Illinois (378 U. S. 478, decided June 22, 1964). The right of a defendant to have counsel at the time of his interrogation by the police is enunciated in that case. Here again, however, the rule does not seem to apply to the facts at hand. As pointed out above, the police were not investigating a crime. The defendant voluntarily came before them. He was accompanied by his brother. He obviously had had sufficient time to secure the services of an attorney before his contact with the police. He never requested the right to seek counsel. The substantial portion of his confession was given before the crime had even been established as far as the police were concerned. His actions were purely voluntary. They obviously took place after consultation with at least one member of his family and could not have resulted in the deprivation of any constitutional rights within the purport of Escobedo v. State of Illinois (supra).
The petition is in all respects denied.